DECISION
{¶ 1} Defendant-appellant, Casaviero T. Senu-Oke, was indicted on nine counts, including aggravated burglary, kidnapping, felonious assault, two counts of rape with sexually violent predator specifications, another three counts of rape and attempted burglary. The attempted burglary charge was dismissed and the trial court found appellant not guilty of the sexually violent predator specifications. A jury convicted him of aggravated burglary, felonious assault, kidnapping and rape. The trial court sentenced him to a ten-year sentence on Count 1, aggravated burglary; a ten-year sentence on Count 2, kidnapping; a ten-year sentence on Count 5, anal intercourse; a ten-year sentence on Count 6, rape through vaginal intercourse; and a ten-year sentence on Count 7, rape through fellatio; and required Counts 1, 2, 5, 6 and 7 to run concurrently. The trial court also imposed a consecutive eight-year sentence on Count 3, felonious assault and a consecutive ten-year sentence on Count 4, rape through vaginal intercourse. Finally, the trial court imposed a consecutive ten-year sentence on Count 8, rape through vaginal intercourse, for a total of 38 years.
 {¶ 2} Appellant filed a notice of appeal, but the appeal was dismissed because no brief was filed. Appellant filed an application to reopen, pursuant to App.R. 26(B), which was granted. Appellant has raised the following assignments of error:
 ASSIGNMENT OF ERROR I Mr. Senu-Oke's convictions for rape, aggravated burglary, felonious assault, and kidnapping are against the manifest weight of the evidence.
 ASSIGNMENT OF ERROR II Mr. Senu-Oke's conviction on Count Eight (rape) must be vacated as it is not supported by sufficient evidence.
 ASSIGNMENT OF ERROR III Mr. Senu-Oke's conviction on Count Three (felonious assault) must be vacated as it is not supported by sufficient evidence.
 ASSIGNMENT OF ERROR IV The trial court erred in failing to make the requisite statutory findings to support the imposition of maximum and consecutive prison sentences totaling thirty-eight years.
 {¶ 3} Appellant's convictions were the result of events which occurred on March 17, 2001. At the trial, Nicole Gallihugh testified that, on March 17, 2001, she went to sleep at approximately 1:00 in the morning. She was awakened by a man's hand over her mouth and across her throat. At first she believed she was dreaming and closed her eyes. The man told her to "get the fuck up" or he would kill her. (Tr. at 179.) She felt something sharp against her throat and the man pulled her out of bed and down the stairs by her hair. When they were downstairs, he hit her and told her to shut up. He told her he wanted to rape her and they struggled. He continually punched her, bit her and, at one point, he put his fist into her windpipe and she started blacking out and seeing stars. He told her that if she did not "shut up, that he had a nine millimeter and he was going to blow [her] away." (Tr. at 183.) They continued struggling but he slipped and she landed on the floor on her back. The fall knocked the wind out of her and he landed on top of her. Nicole testified that he bit her in several places, he put his penis into her vagina two times and he also put his penis into her mouth and her anus. She cried and screamed but the more she did, the more he punched her and smacked her in the face. The man eventually fell asleep on top of her and she was able to crawl away, run upstairs, awaken her husband and call 9-1-1. The police arrived within minutes and found appellant sleeping naked in the Gallihugh home.
 {¶ 4} Nicole's husband, Jeff Gallihugh, also testified. He had taken cough syrup which contained codeine for severe bronchitis before going to sleep. He was awakened by his wife who was crying, naked, shaking and bruised. He identified appellant as the naked man whom the police arrested in his family room.
 {¶ 5} Police Officer Debra Corbett testified that she was working with Officer Michael Keckley and, when they responded, there were already two police officers present at the Gallihugh home. Officer Corbett also identified appellant as the man arrested in the Gallihugh home. Officer Corbett took the victim to Grant Hospital and stated that she was shaking, crying, and had lots of redness and scrapes on her arms.
 {¶ 6} Police Officer Shane Keckley also responded to the 9-1-1 call. Upon arrival, he checked the perimeter of the house and noticed the broken window on the west side and had another officer stand by the window to prevent anyone from escaping through it. Officer Shane Keckley was involved in transporting appellant to the police station and stated that he noticed scratches and welts on appellant's arms. Officer Shane Keckley heard appellant make a statement to Officer Michael Keckley that appellant would rape Keckley's wife like he did that "last bitch," although Officer Shane Keckley also testified that it was not unusual for a suspect to "talk trash" at the police station. (Tr. at 254; 257.) Officer Michael Keckley also testified that appellant said to him: "I'll make your old lady scream like I did that last bitch." (Tr. at 266.)
 {¶ 7} A member of the crime scene search unit testified that no gun or knife was found at the scene. A latent fingerprint examiner with the Columbus Police Department testified that two prints were taken from the broken window and the fingerprints matched appellant.
 {¶ 8} The Sexual Assault Nursing Director for Grant and Riverside Hospitals testified that she supervised the victim's examination at Grant Hospital. The examination includes an assessment for emergency medical treatment, complete physical assessment involving a complete head-to-toe external and internal examination, collection of evidence and a sexual assault history. The examination usually takes between three and seven hours to complete. The nurse described the injuries visible in the pictures that were offered as exhibits. There were varying degrees of bruises on her neck and "large red marks going around the trachea, around the lower chin, a more intense darker bruise mark going from the ear all the way around the neck" and part of the cheek. (Tr. at 298.) There were circular injuries with deeper indentations in the bruise itself on her back and left breast. An internal examination of both her anus and vagina were conducted but there were no injuries; however, the nurse testified that there can be forced entry but no internal injuries. The nurse also testified that the history of the events that the victim told her was consistent with the physical findings.
 {¶ 9} By the first assignment of error, appellant contends that his convictions for rape, aggravated burglary, felonious assault and kidnapping are against the manifest weight of the evidence. The test for whether a judgment is against the manifest weight of the evidence involves a limited weighing of the evidence by the court to determine whether there is sufficient, competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. In State v. Thompkins (1997), 78 Ohio St.3d 380, 387, the Supreme Court of Ohio described the standard of review, as follows:
 * * * Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on the weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. (Emphasis added.) Black's [Law Dictionary (6 Ed. 1990)], at 1594.
 {¶ 10} Appellant argues that there is a complete absence of corroborative evidence to support the victim's testimony concerning the events. While the physical examination did not find semen, there was corroboration through other physical evidence, in addition to testimony from other witnesses. State's Exhibit 1 was the robe that the victim was wearing. She testified that the buttons were intact and it was not torn before the incident. When the robe was admitted into evidence, it was torn. The bruises and red marks on the victim's body were corroborated by Officer Corbett, who testified that she saw lots of redness and scrapes on the victim's arms, by the Sexual Assault Nursing Director who supervised the victim's examination at Grant Hospital, and the photos taken of the victim during that examination only hours after the assault.
 {¶ 11} Officer Shane Keckley testified that he noticed scratches and welts on appellant's arms. Both Officer Shane Keckley and Officer Michael Keckley heard appellant make a statement to Officer Michael Keckley that appellant would rape Keckley's wife like he did that "last bitch." Appellant's fingerprints were found on the broken window into the house, and appellant was found naked in the victim's home.
 {¶ 12} A victim's testimony, if believed, is sufficient to prove each element of rape. State v. Lewis (1990), 70 Ohio App.3d 624, 638. "There is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction." Id., citing State v. Love (1988), 49 Ohio App.3d 88, 91; State v. Gingell (1982), 7 Ohio App.3d 364,365. See, also, State v. Sklenar (1991), 71 Ohio App.3d 444, 447.
 {¶ 13} Despite appellant's contention to the contrary, there is corroboration to the victim's testimony and there is sufficient, competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt as to rape, aggravated burglary, felonious assault and kidnapping, and the convictions are not against the manifest weight of the evidence. Appellant's first assignment of error is not well-taken.
 {¶ 14} By the second assignment of error, appellant contends that his conviction on Count 8, rape, must be vacated as it is not supported by sufficient evidence. Appellee agrees that the victim only testified to two instances of vaginal rape and the assignment of error should be sustained. Thus, appellant's second assignment of error is well-taken.
 {¶ 15} By the third assignment of error, appellant contends that his conviction for felonious assault was not supported by sufficient evidence. The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." Thompkins, at 386.
 {¶ 16} Appellant argues that the evidence did not support a finding of serious physical harm as required for a conviction pursuant to R.C. 2903.11. R.C. 2903.11, in effect at the time, provided, as follows:
(A) No person shall knowingly do either of the following:
(1) Cause serious physical harm to another or to another's unborn[.]
 {¶ 17} "Serious physical harm to persons" was defined in R.C.2901.01(A)(5) as follows:
 (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
(b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
In this case, the victim testified that appellant repeatedly hit her, punched her and bit her. At one point, appellant put his fist into her windpipe and she started blacking out and seeing stars. At another point during the struggle, she landed on her back and had the wind knocked out of her. The victim also testified that she can no longer go into the family room of her house, she sees a therapist once a week and is planning on selling her house as the result of this attack. The Sexual Assault Nursing Director testified that the victim had varying degrees of bruises on her neck and "large red marks going around the trachea, around the lower chin, a more intense darker bruise mark going from the ear all the way around the neck" and part of the cheek. (Tr. at 298.) There were circular injuries with deeper indentations in the bruise itself on her back and left breast. The pictures taken of her demonstrated her injuries.
 {¶ 18} This case is similar to State v. Edwards (July 3, 1991), Cuyahoga App. No. 58783, in which the defendant, who was convicted of rape, kidnapping and felonious assault, argued that the evidence was insufficient to prove serious physical harm. In Edwards, the defendant wrapped the bed sheet around the victim's neck, flipped her onto her back, bit her several times and raped her vaginally. As in Edwards, we find the record, including the photographs, contains sufficient evidence that appellant inflicted serious physical harm upon the victim. Appellant's third assignment of error is not well-taken.
 {¶ 19} By the fourth assignment of error, appellant contends that the trial court erred in failing to make the requisite statutory findings to support the imposition of maximum and consecutive prison sentences totaling 38 years. Appellant argues that the trial court did not make the findings required by R.C. 2929.14 for imposing maximum sentences, and failed to address the statutory factors outlined in R.C. 2929.14(E) or make the requisite factual findings before imposing consecutive sentences. In the syllabus of State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, the Supreme Court of Ohio recently determined that:
 1. Pursuant to R.C. 2929.14(E)(4) and 2929.19(B)(2)(c), when imposing consecutive sentences, a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing.
 2. Pursuant to R.C. 2929.14(B), when imposing a nonminimum sentence on a first offender, a trial court is required to make its statutorily sanctioned findings at the sentencing hearing.
 {¶ 20} Therefore, when the trial court imposes maximum and consecutive sentences, it must make the required findings and give its reasons at the sentencing hearing. Thus, the matter must be remanded for resentencing by the trial court. Appellant's fourth assignment of error is well-taken.
 {¶ 21} For the foregoing reasons, appellant's first and third assignments of error are overruled, the second and fourth assignments of error are sustained and the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part. This cause is remanded to that court for resentencing and with instructions to vacate appellant's conviction as to Count 8.
Judgment affirmed in part, reversed in part and remanded for resentencing with instructions.
BROWN and WATSON, JJ., concur.